**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------------X
NICOLE PAPPAS,                      :    NO. 3:04CV304 (EBB)
                                    :
        Plaintiff,                  :
            v.                      :
                                    :
WATSON WYATT & COMPANY              :
                                    :
        Defendant.                  :
------------------------------------X
```

RULING ON MOTION TO STRIKE PLAINTIFF'S CLAIM FOR DAMAGES IN THE FORM OF LOSSES RESULTING FROM HER INVOLUNTARY WITHDRAWAL FROM HER INDIVIDUAL RETIREMENT ACCOUNT [Doc. No. 102]

INTRODUCTION

After a trial in this case, the jury found that Defendant Watson Wyatt and Company unlawfully retaliated against Plaintiff Nicole Pappas in violation of Title VII of the Civil Rights Act of 1964 [hereinafter "Title VII"], as amended, 42 U.S.C. § 2000e et seq., and the Connecticut Fair Employment Practices Act [hereinafter "CFEPA"], Conn. Gen. Stat. § 46a-60(a)(4). The parties agree that the jury's verdict entitles the Plaintiff to damages in the amount of $77,688.33. The Plaintiff claims that she is entitled to an additional $44,263.69 reflecting losses she incurred after withdrawing money from her retirement account after her unlawful termination by the Defendant. The Defendant moves to strike this element of damages.

1

FACTUAL BACKGROUND

The jury determined that the Plaintiff is entitled to damages resulting from her unlawful termination by the Defendant. The jury awarded the Plaintiff $20,625.00, which reflects the bonus that the Plaintiff would have received had the Defendant not fired her. The jury did not calculate any other damages. Instead, the parties stipulated before the verdict that, should the jury find for the Plaintiff, she would be entitled to lost back pay in the amount of $51,000 and COBRA contributions in the amount of $6,063.36. The parties agree that the Plaintiff is entitled to these elements of compensatory damages.

After her unlawful termination on May 5, 2003, the Plaintiff was unemployed until January of the following year. (Transcript of December 13, 2006 [hereinafter "Tr. 12/13/06"] at 153-54.) During this time, Plaintiff withdrew approximately $72,000 from her retirement account in order to support herself. (Id. at 154) As a consequence of making an early withdrawal from her retirement account, Plaintiff incurred a loss of $13,827.50 in taxes and penalties. (Affirmation of Ann Clark [hereinafter "Clark Aff."] Ex. D.) She lost an additional $394.78 matching contribution that her employer would have paid into her account. (Id.) She also claims a loss of $30,041.41 in interest and appreciation on the investments in her retirement account. (Id.) In total, the Plaintiff contends that she is entitled to damages in the amount of

2

$44,263.69 due to her early invasion of her retirement account.

During the trial, counsel for the Plaintiff attempted to introduce into evidence the amount of money that the Plaintiff lost as a result of withdrawing funds from her retirement account. (Tr. 12/13/06 at 155.) The Defendant objected to the introduction of this evidence. (Id.) Instead of arguing about this objection, the parties agreed to stipulate to the amount of the losses incurred by the Plaintiff. (Id. at 228-232.) The Defendant did not dispute that the Plaintiff had been forced to withdraw money from her retirement account; instead the Defendant argued that these losses were not compensable under Title VII or the CFEPA as a matter of law. The parties agreed to allow the Court to rule on this issue.

During the parties' discussion at trial about this issue, counsel for the Defendant said

> [the Plaintiff is] claiming that she's entitled to lost investment income, and we don't believe that is proper damages. If Your Honor makes a ruling that it is and she gets the lost investment income, then we're okay with that. The argument isn't the lost investment income. We just think that under Title VII it talks about pecuniary loss being actual out-of-pocket, not lost time, investment, so that's what our objection is to it...

(Id. at 228.) Later on, counsel for the Defendant said, "I think, Your Honor, just so you understand, our main concern has to do with claiming lost investment earnings. We don't think that that's a proper out-of-pocket expense that Title VII says is compensable." (Id. at 232.) With respect to the taxes lost as a result of withdrawing this money, counsel for the Defendant said, "...the

3

taxes, there's nothing you can do.  The IRS just takes some of your money.  That's not a compensable injury."  (Id.)

DISCUSSION

A.   Compensatory Damages Available Under Title VII

A plaintiff who successfully claims retaliation in violation of Title VII may recover compensatory and punitive damages.[1]  42 U.S.C. § 1981a.  These forms of relief, made available by the 1991 Amendments to Title VII, may be awarded in addition to the back pay, front pay and other equitable relief that was available prior to the 1991 Amendments under 42 U.S.C.§ 2000e et seq.  The availability of compensatory damages in the 1991 Amendments reflects Congress' conclusion that "additional remedies were necessary to 'help make victims whole.'"  Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2417 (2006) (quoting West v. Gibson, 527 U.S. 212, 219, 119 S.Ct. 1906 (1999) (quoting H.R.Rep. No. 102-40, pt. 1, pp. 64-65 (1991))).  In order to receive this form of make-whole relief, a plaintiff must show that the defendant's unlawful actions caused the losses for which he or she seeks compensatory damages.  Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1215 (6th Cir. 1996) (citing Carey v. Piphus,

---

[1]The parties agree that the Court should apply the same legal analysis to the Plaintiff's claims under the Connecticut Fair Employment Practices Act and to her claims under Title VII.  In their papers, the parties have presented exclusively arguments under federal law.  The Court therefore will resolve this issue under Title VII and the cases interpreting that federal statute.

435 U.S. 247, 263-64, 98 S.Ct. 1042, 1052-53 (1978)); See also Enforcement Guidance: Compensatory and Punitive Damages Available Under § 102 of the Civil Rights Act of 1991, Decision No. 915.002 (July 14, 1992), 1992 WL 189089 at *4 [hereinafter "EEOC Guidance"] ("The critical question is whether the complaining party incurred the pecuniary losses as a result of the employer's discriminatory action or conduct").

Pecuniary losses recoverable under § 1981a "include, for example, moving expenses, job search expenses, medical expenses, psychiatric expenses, physical therapy expenses, and other quantifiable out-of-pocket expenses that are incurred as a result of the discriminatory conduct." EEOC Guidance, 1992 WL 189089 at *4. In addition to past pecuniary losses, a plaintiff may recover for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." See 42 U.S.C. § 1981a(b)(3). Consistent with the broad wording of the statute and the EEOC's generous interpretation of the statute, courts have awarded compensatory relief for a wide variety of different kinds of losses. E.g., Williams v. Pharmacia Inc., 137 F.3d 944, 952-53 (7th Cir. 1998) (upholding award for future pecuniary losses for plaintiff's lost earning capacity resulting from her discriminatory discharge); Van Horn v. Specialized Support Services, Inc., 241 F.Supp.2d 994, 1014-15 (S.D. Iowa 2003) (awarding compensation for excess

5

commuting time and costs incurred by plaintiff as a result of having to drive a longer distance to her new job); Rivera v. Baccarat, Inc., 34 F.Supp.2d 870, 876-77 (S.D.N.Y. 1999) (awarding 401k contributions employer would have made until plaintiff was eligible for a new program); Brand v. North Carolina Dep't of Crime Control, No. 03 Civ. 00966, 2005 WL 1799895 (M.D.N.C. July 26, 2005.) (declining to set aside a jury verdict that awarded a state trooper, who was the victim of a retaliatory transfer, compensation for costs of maintaining a residence close to his previous posting and costs of commuting from his new posting in order to participate in family activities).

Even before additional compensatory relief was made available by the 1991 Amendments, courts frequently awarded damages for expenses incurred by victims of Title VII violations after they had left their respective defendant employers. E.g., McDowell v. Miss. Power & Light, 641 F.Supp. 424, 431 (S.D. Miss. 1986) (awarding travel expenses and cost of renting mobile home as part of back pay); Thomas v. Cooper Industries, Inc., 627 F.Supp 665, 668 (W.D.N.C 1985) (including in back pay calculation the costs of establishing a household incurred by plaintiff when she was forced to move to a new job); McKnight v. General Motors Corp., 705 F.Supp. 464, 468 (E.D. Wis. 1989)(holding that a jury's award for lost wages that included "lost benefits, projected salary increases and expenses incurred in commuting to new job" was reasonable),

rev'd in part on other grounds, 908 F.2d 104 (7th Cir. 1990).

In support of her claim for compensatory damages related to her invasion of her retirement account, the Plaintiff cites Luciano v. Olsten Corp., 912 F.Supp 663, 674 (E.D.N.Y 1996), aff'd, 110 F.3d 210 (2d Cir. 1997), in which the court awarded compensatory damages reflecting the penalty paid by a Title VII plaintiff after she withdrew money from her retirement account. While the district court in Luciano concluded that it is not error for the court to have instructed the jury that it could include this tax penalty in the damages it awarded, the court did not provide any analysis of this issue. Id. In addition, the award in Luciano did not include lost interest or lost appreciation on the investments in the plaintiff's retirement account.

The Defendant contended at trial that the losses at issue here were not compensable under Title VII as a matter of law. However, the Defendant has cited no cases in support of any rule limiting compensable damages available under Title VII. To the contrary, it appears that § 1981a allows an award of damages for many kinds of injuries. The statute and the case law do not specify exactly what kinds of losses are compensable. Instead, the decision to award damages under § 1981a is "largely within the province of the jury." See Fine v. Ryan Int'l Airlines, 305 F.3d 746, 755 (7th Cir. 2002); see also Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 353 118 S.Ct. 1279, 1287 (1998)("It has long been recognized

that 'by the law the jury are judges of the damages'") (quoting Lord Townshend v. Hughes, 2 Mod. 150, 151, 86 Eng. Rep. 994, 994-995 (C.P. 1677)). The EEOC Guidance instructs that "[c]ompensatory damages 'may be had for any proximate consequences which can be established with requisite certainty.'" 1992 WL 189089 at *4 (quoting 22 Am. Jur. 2d Damages § 45 (1965)). The Guidance therefore suggests that compensatory damages under § 1981a are subject only to the principle of proximate cause which limits a plaintiff's recovery in tort cases.

The interpretation of § 1981a as allowing damages that are analogous to the relief available in a tort cause of action is consistent with courts' reasoning regarding Title VII and its 1991 Amendments. In United States v. Burke, 504 U.S. 229, 112 S.Ct. 1867 (1992), the Supreme Court considered whether an award of damages under Title VII as enacted prior to the 1991 Amendments could be excluded for tax purposes from the recipient's gross income under an exemption for damages received for personal injuries. The Court held that such an award did not fall into the exemption because pre-1991 Title VII did not create a "tort-like" cause of action. Id. at 241, 112 S.Ct. at 1874. The Court reasoned that, while discrimination "could constitute a 'personal injury,'" the "circumscribed remedies available under [pre-1991] Title VII stand in marked contrast ... to those available under traditional tort law." Id. at 239-40, 112 S.Ct. at 1873. The

8

Court noted that the remedial scheme of pre-1991 Title VII did not "purport[] to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (e.g., a ruined credit rating)." Id. (citing Walker v. Ford Motor Co., 684 F.2d 1355, 1364-1365, n.16 (11th Cir. 1982)). The Court distinguished pre-1991 Title VII from other antidiscrimination statutes, including § 1981, which "sound[] basically in tort." Id. The 1991 Amendments, however, allow plaintiffs to recover compensatory damages for precisely the kinds of harms that the Court noted were not compensable under pre-1991 Title VII. The effect of the Amendments was to bring Title VII into line with other "tort-like" civil rights legislation by making available "a broad range of damages to compensate the plaintiff 'fairly for injuries caused by the violation of his legal rights.'" Id. at 235, 112 S.Ct. at 1871 (quoting Piphus, 435 U.S. at 257, 98 S.Ct. 1042 at 1049). See In re Webb, 214 B.R. 553 (E.D. Va. 1997) (holding that recoveries under the post-1991 Title VII were sufficiently tort-like to be exempt from federal creditor process as proceeds of a personal injury action).

The view that compensatory damages are limited by "tort-like" principles is supported by the practice of courts in awarding damages under § 1981a. Courts generally award damages under § 1981a for harms proximately caused by the defendant's

9

discriminatory acts. E.g., Tolbert v. Queens College, 242 F.3d 58, 74-75 (2d Cir. 2001) (approving of jury instruction stating that jury "could award compensatory damages for injuries [the plaintiff] proved were proximately caused by" defendants' discrimination). Compensable damages are also awarded for harms proximately caused by the defendant's unlawful acts under other civil rights statutes. E.g., Gibeau v.. Nellis, 18 F.3d 107, 110 (2d Cir. 1994) ("[t]o recover compensatory damages under Section 1983, a plaintiff must prove that his injuries were proximately caused by a constitutional violation"); Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998) ("in a retaliation case, as in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury"); Warner v. Orange County Dept. of Probation, 115 F.3d 1068, 1071 (2d Cir. 1996) ("in cases brought under § 1983 a superseding cause, as traditionally understood in common law tort doctrine, will relieve a defendant of liability").

While proximate cause remains an elusive concept, one test for proximate cause is whether the defendant's unlawful actions were "substantial factor[s] in the sequence of causation and whether the injury is reasonably foreseeable or anticipated as a natural consequence" of the defendant's actions. Noga v. City of Schenectady Police Officers, 169 F. Supp. 2d 83, 89 (N.D.N.Y. 2001) (applying the test in the context of a § 1983 claim) (quoting Sanchez v. Bellefeuille, 855 F. Supp. 587, 595 (N.D.N.Y. 1994) and

citing Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 15 (2d Cir. 2000)).  Of course, it is not for the Court in this case to decide as a factual matter whether or not the Defendant's actions proximately caused the Plaintiff's losses under this or any other definition of proximate cause.  The parties chose not to submit that factual question to the jury, and they chose not to present any substantial evidence relating to this issue. Rather, the Court must resolve the parties' dispute over whether or not the losses are compensable under Title VII as a matter of law.  The Court must determine only whether the rule that a plaintiff may recover for losses that are proximately caused by a defendant's discriminatory acts bars recovery in this case.

The Court concludes that damages reflecting the penalty paid by the Plaintiff when she was forced to withdraw money from her retirement account, as well as damages for the employer matching contribution, are recoverable under § 1981a.  A jury could conclude that these losses were proximately caused by the Defendant's actions.  A jury could conclude that Plaintiff's need to withdraw money from her account was reasonably foreseeable and anticipated as the natural consequence of the Plaintiff's unlawful termination. It was also reasonably foreseeable that the Plaintiff would be forced to pay a penalty and forego her employer's matching contribution upon invading her retirement account after her unlawful termination.  Courts award similar damages in analogous

11

situations in order to make plaintiffs whole. E.g., Luciano, 912 F. Supp. at 674; White v. Honda of Am. Mfg., 191 F. Supp. 2d 933, 952 (S.D. Ohio 2002) (holding that it is a question of fact whether defendant's wrongful dismissal of plaintiff in violation of the Americans With Disabilities Act was the proximate cause of the plaintiff's losses, consisting of the income tax and early withdrawal penalty, after she was forced to liquidate her pension fund); Goughnour v. Renton, No. CIVA 04-1543, 2006 WL 1669886 at *1 (W.D. Pa. June 13, 2006) (awarding damages against doctor in medical malpractice case for penalty plaintiff paid after depleting his retirement account having been fired from his job due to disability resulting from defendant's malpractice).

However, the alleged loss of appreciation and interest on the Plaintiff's withdrawn investment is not an "out-of-pocket" expense for which the Defendant can be held liable. These particular losses were not proximately caused by the Plaintiff's unlawful termination. The Plaintiff's claimed losses of interest and appreciation are calculated based on what the approximately $72,000 she withdrew from her retirement account would have earned over the three year period between her termination and the trial. (See Clark Aff. Ex. C.) During this relatively short period of time, she lost out on the opportunity for her retirement account to earn $30,041.41 because these three years coincided with a period during which some of the investments in her retirement account were very

successful. Given the volatility of the stock market, the Court can only conclude that these losses were fortuitous. It could not have been "reasonably anticipated" that the Plaintiff would have suffered this particular kind of loss over a short period of time as a "natural consequence" of the Defendant's actions.

B.  The Plaintiff's Duty to Mitigate Damages

In the absence of a legal rule prohibiting an award under Title VII of compensatory damages for the penalties the Plaintiff paid as a result of invading her retirement account, the Defendant makes a factual argument that the Plaintiff's choice to invade her retirement account was voluntary and, therefore, her losses were not caused by the Defendant's unlawful retaliation. (Def.'s Mot. to Strike at 4-5.) The Defendant claims that the Plaintiff should have applied for unemployment benefits instead of withdrawing money from her retirement account and that the Defendant should not be held responsible for the Plaintiff's "unreasonable personal financial choices." (Def.'s Reply. Mem. at 2.) The Defendant argues, therefore, that the Plaintiff should have mitigated her damages,

The "prevailing plaintiff in a Title VII case must attempt to mitigate her damages by using 'reasonable diligence in finding other suitable employment.'" Dailey v. Societe Generale, 108 F.3d 451, 455-56 (2d Cir. 1997) (quoting Ford Motor Co. v. EEOC, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065 (1982)). The Defendant's

13

argument might therefore have some merit had the Defendant not agreed during trial that the Plaintiff had mitigated her damages. (Tr. 12/13/06 at 20; Tr. 12/15/06 at 22.) Having made this concession, Defendant cannot now argue that the Plaintiff's decision to withdraw money from her retirement account was unreasonable and violated her duty to mitigate damages. Furthermore, "it is the defendant who has the evidentiary burden of demonstrating at trial that a plaintiff has failed to satisfy" her duty to mitigate. Dailey, 108 F.3d at 456. The Defendant chose not to inquire into the reason why the Plaintiff did not collect unemployment compensation benefits or to present any evidence of the Plaintiff's failure to mitigate and chose not to submit the question of mitigation to the jury. The Defendant cannot meet its burden now with mere allegations that the Plaintiff unreasonably failed to mitigate her damages. See Kerman v. City of New York, 374 F.3d 93, 120 (2d Cir. 2004) ("[t]o the extent that a particular finding of fact [is] essential to an affirmative defense,.. it [is] incumbent on [the defendant] to request that the jury be asked the pertinent question").

C. Evidence That The Defendant's Discriminatory Acts Proximately Caused The Plaintiff's Losses

The Defendant also argues that the Plaintiff failed to present any evidence at trial that the Plaintiff incurred losses from invading her retirement account as a result of the Defendant's unlawful retaliation, that there has been no finding that its

conduct caused these losses, and that the Plaintiff is therefore barred from recovering for these losses. (Def.'s Reply Mem. at 3-4.) (Id.)

The Defendant admits that it stipulated to the amount of the Plaintiff's losses, but denies that it agreed to anything more. (Id.) Defendant apparently claims that it never conceded that the Plaintiff's losses were caused by its unlawful retaliation. (Id.) However, the Defendant's current description of the concessions it made on this issue is at odds with the previous statements of defense counsel. At trial, counsel for the Defendant expressed an intention on the part of the Defendant to agree to all the facts presented by the Plaintiff and to treat the dispute as a purely legal issue about the kinds of damages that are compensable under Title VII.

The only evidence presented at trial on the issue of whether the Defendant caused the losses at issue is the Plaintiff's testimony that she "had to withdraw money from [her] retirement account" during her period of unemployment. (Tr. 12/13/06 at 154.) This evidence tends to establish that the losses incurred by the Plaintiff were the result of the Defendant's retaliatory termination. The Defendant chose not to present any evidence rebutting this evidence. After objecting to this portion of the Plaintiff's testimony, counsel for the Defendant said, "we're going to raise the legal issue later on and, depending on how [the Court]

15

rules, I don't think we're going to need any testimony on this." (Id. at 156.) After raising this "legal issue" later that same day, defense counsel said, "If Your Honor makes a ruling that [the Plaintiff's losses are compensable under Title VII] and she gets the lost investment income, then we're okay with that." (Id. at 228.)

If the Defendant genuinely sought to contest Plaintiff's claim that these losses were caused by its unlawful actions, it would have presented evidence supporting its point of view. Had the Defendant intended to do something other than concede that it caused the Plaintiff's losses, then it would not have framed the dispute as a purely "legal issue." Having initially agreed to accept the Court's ruling on the issue, the Defendant cannot now argue that the lack of a finding by the jury on the issue of causation bars recovery for these losses.

A more plausible interpretation of defense counsel's statements is that counsel attempted to argue that Title VII barred relief for these kinds of losses, no matter how they were caused. For example, counsel for the Defendant told the Court that "[w]e don't think that that's a proper out-of-pocket expense that Title VII says is compensable." (Id. at 232.) Having stipulated to the Plaintiff's version of the facts, the Defendant cannot now raise a factual dispute about how the Plaintiff's losses were caused.

Furthermore, the jury found that the Plaintiff was entitled to

16

damages but, apart from the amount of compensation for the bonus the Plaintiff would have received, by agreement of the parties, the jury did not calculate these damages. The jury's finding consisted of an answer in the affirmative to an interrogatory asking whether the jury found that the Plaintiff was "entitled to damages." The jury was told that the amount of damages, with the exception of Plaintiff's bonus, would be calculated by the Court. By framing its objection to this disputed element of damages as a purely legal issue, the Defendant effectively announced that it would treat the jury's general determination that she is entitled to damages as encompassing her claim to the losses at issue here, if the Court found they were compensable, as well as her back pay and COBRA contributions.

The Defendant chose not to ask for a more specific interrogatory that would have directed the jury's attention to the issue of whether the Defendant proximately caused the particular losses at issue. The Defendant failed to object to the question presented to the jury and cannot now claim that the jury has not made the specific finding that it claims is necessary for the Plaintiff to recover these damages. <u>United States Football League v. Nat'l Football League</u>, 842 F.2d 1335, 1367 (2d Cir. 1988) (holding that "counsel's failure to seize the opportunity" to seek clarification upon the return of an ambiguous verdict constitutes a waiver).

During the charging conference, the Defendant asked the Court to instruct the jury on damages in an abbreviated fashion. (Tr. 12/15/06 at 23-25.) Having asked for strategic reasons that the jury not be required to fully consider the issue of damages, the Defendant now complains that they jury has not made a finding on causation. The Defendant cannot have it both ways. See <u>Tuttle v. Equifax Check</u>, 190 F.3d 9, 16 (2d Cir. 1999) ("[a] party who requests an instruction cannot complain if the instruction, or one substantially like it, is given") (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2558, at 471 (2d ed. 1994)).

The jury made all the findings it needed to make in order for these damages to be awarded. The Defendant's arguments that the lack of a finding on whether it caused the Plaintiff's losses are without merit.

## CONCLUSION

For the foregoing reasons, the Defendant' Motion to Strike Plaintiff's Claim for Damages in the Form of Losses Resulting from Her Individual Retirement Account [Doc. No. 102] is GRANTED in part and DENIED in part. The Plaintiff's damages award shall include $13,827.50, reflecting taxes and penalties she paid when she made withdrawals from her retirement account, and $394.78, reflecting the matching contribution that her employer would have paid into the account. Damages in the amount of $30,041.41,

reflecting the Plaintiff's claimed losses of interest and stock appreciation, are not awarded.

                                SO ORDERED

                                /s/
                        ELLEN BREE BURNS
                        SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 20th day of November, 2007