UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------X
NICOLE PAPPAS,                      :    NO. 3:04CV304 (EBB)
                                    :
        Plaintiff,                  :
             v.                     :
                                    :
WATSON WYATT & COMPANY              :
                                    :
        Defendant.                  :
-----------------------------------X
```

RULING ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS,
INTEREST, AND RELIEF FROM TAX CONSEQUENCES AND PLAINTIFF'S MOTION
FOR SUPPLEMENTAL ATTORNEYS' FEES AND COSTS

INTRODUCTION

After a trial in this case, the jury found that Defendant
Watson Wyatt and Company unlawfully retaliated against Plaintiff
Nicole Pappas in violation of Title VII of the Civil Rights Act of
1964 [hereinafter "Title VII"], as amended, 42 U.S.C. § 2000e et
seq., and the Connecticut Fair Employment Practices Act
[hereinafter "CFEPA'], Conn. Gen. Stat. § 46a-60(a)(4).    The
Plaintiff was awarded damages of over $90,000.    Pursuant to Title
VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), and
the CFEPA, Conn. Gen. Stat. § 46a-104, Plaintiff now moves for
attorneys' fees and costs.    In addition, Plaintiff moves for an
award of pre- and post- judgment interest pursuant to 28 U.S.C. §
1961 and Conn. Gen. Stat. § 37-3a and for relief from the tax
consequences of her damages award.    For the reasons set for below,
the motions are GRANTED in part and DENIED in part.

1

In the Plaintiff's Motion for Attorneys' Fees and Costs, Interest, and Relief from Tax Consequences [Doc. No. 114], she seeks awards for 359 hours expended by Attorney Anne Clark at a rate of $425 per hour for a total of $152,575.00; 110.5 hours expended by Attorney Valdi Licul at a rate of $325 per hour for a total of $35,912.50; 203 hours expended by Attorney Michele Host at a rate of $275 per hour for a total of $55,825.00; 20.25 hours expended by Attorney Sharon Wilson at a rate of $250 per hour for a total of $5,062.50; 41.25 hours expended by law clerks at a rate of $75 per hour for a total of $3,093.75; and 56.25 hours expended by paralegals at a rate of $65 per hour for a total of $3,656.25. In total, in this motion the Plaintiff seeks attorney's fees in the amount of $265,125.00.  The Plaintiff also seeks costs totaling $28,485.22.

In the Plaintiff's Motion for Supplemental Attorneys' Fees and Costs [Doc. No. 139], she seeks additional fees and costs for work performed subsequent to the conclusion of the trial.  For this time period, the Plaintiff seeks awards for 50.50 hours expended by Attorney Anne Clark at a rate of $425 per hour for a total of $21,462.50; 81.75 hours expended by Attorney Valdi Licul at a rate of $325 per hour for a total of $36,568.75; 20.25 hours expended by Attorney Rebecca Osborne at a rate of $250 per hour for a total of $5,062.50; 3.5 hours expended by law clerks at a rate of $75 per

hour for a total of $262.50; and 8 hours expended by paralegals at a rate of $65 per hour for a total of $520.00. In total, in this motion the Plaintiff seeks attorney's fees in the amount of $53,876.00. The Plaintiff also seeks costs totaling $1,362.34.

In addition, the Plaintiff seeks both pre- and post- judgment interest on the damages she was awarded to compensate her for her back pay, her COBRA contributions, and the tax penalty she paid when she withdrew money from her retirement. The Plaintiff also seeks a "gross up" of certain damages in order to compensate her for the adverse tax consequences of her damages award.

## LEGAL ANALYSIS

### A. ATTORNEY'S FEES

1. Prevailing Party Status

The Court may award "a reasonable attorney's fee" and costs to the "prevailing party" in an action brought under Title VII. 42 U.S.C. § 2000e-5(k). "A typical formulation" of prevailing party status is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).

While the Plaintiff in this case was unsuccessful in her claim for punitive damages, she was awarded back pay and compensatory

relief totaling over $90,000.¹  The plaintiff was made whole for

the losses she incurred as a result of her retaliatory discharge.

She most assuredly prevailed on a "significant issue in litigation

which achieve[d] some of the benefit [she] sought in bringing

suit."  Therefore, the Court awards Plaintiff attorney's fees and

costs.

2.  Calculation of the Reasonable Fee Award

The Court next determines what fee is reasonable.  Analysis of

the reasonable fee, which traditionally has been referred to as the

"lodestar,"² "involves determining the reasonable hourly rate for

each attorney and the reasonable number of hours expended, and

multiplying the two figures together to obtain the presumptively

reasonable fee award."  Porzig v. Dresdner, Kleinwort, Benson,

North America L.L.C., No. 06-1212, 2007 WL 2241592, at *5 (2d Cir.

Aug. 7, 2007)(citing Arbor Hill Concerned Citizens Neighborhood

---

¹The jury awarded the Plaintiff $20,625 reflecting her lost
bonus.  The parties stipulated to a further $57,063.36 in back
pay and compensatory damages.  The Court recently awarded an
additional $14,222.28 in compensatory damages.  (See Ruling on
Motion to Strike Plaintiff's Claim for Damages in the Form of
Losses Resulting From Her Involuntary Withdrawal From Her
Individual Retirement Account (Nov. 20, 2007) [Doc. No. 148.])

²Arbor Hill Concerned Citizens Neighborhood Ass'n v. County
of Albany,  493 F.3d 110, 117 (2d Cir. 2007) (abandoning use of
the term "lodestar" and holding that courts should instead
calculate a "reasonable fee").  See also id. at 118 n.4 ("While
we do not purport to require future panels of this court to
abandon the term ["lodestar"] - it is too well entrenched - this
panel believes that it is a term whose time has come").

Ass'n v. County of Albany, 493 F.3d 110, 117 (2d Cir. 2007)). The fee applicant bears the burden of producing "satisfactory evidence" that the fee requested in reasonable. See Tsombanidis v. City of West Haven, 208 F. Supp. 2d 263, 270 (D. Conn. 2002) (citing Blum v. Stenson, 465 U.S. 886, 896, n. 11 (1984)).

    a.   Calculation of the Reasonable Hourly Rate

In order to determine a reasonable hourly rate, the Court must consider "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens, 493 F.3d at 112, 117-18. In making this determination, the Court should "bear in mind all of the case-specific variables that [courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. at 117. These variables include the following twelve so-called Johnson-factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 114 n.3 (citing Johnson v. Georgia Highway Express, 488 F.2d 714, 717-19 (5th Cir. 1974)). In most cases, a court should "use the approximate market rate for an attorney's services in

calculating the presumptively reasonable fee." <u>Arbor Hill Concerned Citizens</u>, 493 F.3d at 119-20 (citing <u>Missouri v. Jenkins</u>, 491 U.S. 274, 283 (1989)).

In support of her request for an hourly rate of $425 for Attorney Clark, Plaintiff submits the Declaration of Anne Clark [Doc. No. 115, hereinafter "Clark Decl."], and the Affidavits of Gary Phelan [Doc. No. 117, hereinafter "Phelan Aff."] and Robert Richardson [Doc. No. 118, hereinafter "Richardson Aff."]. Ms. Clark, who was primarily responsible for the litigation of this case, has specialized in the field of employment and discrimination law since the early 1990s. (Clark Decl. ¶¶ 33-35.) She has acted as lead counsel representing clients in many employment matters. (<u>Id.</u>) She lectures and teaches about this area, which is her specialty. (<u>Id.</u>) She is a partner at the firm of Vladek, Waldman, Elias and Engelhard, P.C. [hereinafter the "Vladek Firm"], which has achieved numerous successes in employment discrimination cases. (Id. ¶ 32.) Her firm usually bills clients for her services at an hourly rate of $450, which is higher than the rate of $425 per hour the Plaintiff requests in this case. (Id. ¶ 35.) Mr. Phelan practices employment law based in Stamford, Connecticut and states that he bills clients at a rate of $425 per hour. (Phelan Aff. ¶¶ 1, 4, 5, 8.) He is a partner at a satellite office of a New York-based firm. (<u>Id.</u> ¶ 1.) Mr. Phelan states that he believes, based on his knowledge of the market and Ms. Clark's level of skill and

experience, that her ordinary billing rate of $450 is reasonable. (Id. ¶¶ 5-8.)  Mr. Richardson, who practices employment law in New Haven, Connecticut, states his billing rate is $325 per hour and that most New Haven firms specializing in defending employment suits bill partners' time at a rate of at least $350 per hour. (Richardson Aff. ¶¶ 6-10.)

Attorney Licul worked on preparing this case for trial and conducted the trial along with Ms. Clark.  (Clark Decl. ¶ 36.)  In the time since the trial he has become a partner at the Vladek Firm.  (Id.)  He has extensive experience litigating cases at the trial and appellate levels.  (Id.)  The Vladek Firm bills for his time at an hourly rate of $375, which is higher than the rate of $325 Plaintiff requests for Mr. Licul's time.  (Id.)  Mr. Phelan states that an associate in his Stamford office bills at a rate of $350 per hour.  (Phelan Aff. ¶ 9.)  Mr. Richardson states that attorneys at New Haven law firms who graduated from law school at about the same time as Mr. Licul often bill at rates of between $290 and $300 per hour.  (Richardson Aff. ¶ 9.)

Attorneys Michele Host and Sharon Wilson both graduated from law school in 2000. (Clark Decl. ¶¶ 37-38.)  Ms. Host did extensive work on this case during discovery and in preparing pretrial submissions.  (Id. ¶ 37.)  Ms. Wilson worked on the initial stages of this case.  (Id. ¶ 37.)  The Vladek Firm bills for work by associates at rates of $225 to $350 per hour.  (Id. ¶ 39.)

Attorney Rebecca Osborne performed work after the trial in responding to the Defendant's Motion to Strike Damages. (Clark Declaration in Support of Plaintiff's Supplemental Application for Attorney's Fees and Costs [Doc. No. 140, hereinafter "Clark Decl. Supp."] ¶7.) The Vladek Firm usually bills clients for Ms. Osborne's work at a rate of $275 per hour, which is a higher rate than the $250 Plaintiff requests here. (Id. ¶ 8.)

The Defendant argues that the hourly rates requested for the Plaintiff's attorneys are excessive. The Defendant first claims that the Plaintiff has refused to disclose the terms of her retainer agreement with the Vladek Firm. (Defendant's Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, Interest and Relief from Adverse Tax Consequences [Doc. No. 130, hereinafter "Def.'s Mem. in Opp."] at 15.) The Defendant argues that the Court should make the "adverse inference" that the hourly rates the Plaintiff requests are higher than the rates she agreed to pay the firm and should therefore award a lower hourly rate. (Id.) In response, Ms. Clark explains that the Plaintiff agreed to pay Ms. Clark and Mr. Licul $450 and $375 per hour respectively if the Plaintiff was successful in this case. (Reply Declaration of Anne L. Clark in Support of Plaintiff's Application for Attorney's Fees and Costs [Doc. No. 137, hereinafter "Clark Reply Decl."], ¶ 8).

While an actual fee agreement may "provide a strong indication

of what private parties believe is the reasonable fee to be awarded," such a billing arrangement by no means establishes the "ceiling" on a fee award. <u>Crescent Publ'g Group, Inc. v. Playboy Enters.</u>, 246 F.3d 142, 151 (2d Cir. 2001); <u>see also</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 93 (U.S. 1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness....[b]ut as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statute and [the] policy and purpose"). In considering what constitutes a reasonable hourly rate, the Court must determine "what a *reasonable*, paying client would be willing to pay." <u>Arbor Hill Concerned Citizens</u>, 493 F.3d at 112, 117-18 (emphasis added). The rate that the actual client was willing to pay is far from dispositive of the rate that should be awarded by the Court. <u>See</u> <u>Id.</u> at 112 n.2 ("Our decision today in no way suggests that attorneys from non-profit organizations or attorneys from private law firms engaged in pro bono work are excluded from the usual approach to determining attorneys' fees. We hold only that in calculating the reasonable hourly rate for particular legal services, a district court should consider what a reasonable, paying client would expect to pay.")

The Defendant also argues that the hourly rates requested for Attorneys Clark and Licul are excessive for lawyers practicing in

this district. The Defendant cites cases in which courts in this district have awarded fees at hourly rates considerably lower than $425. While the Court's familiarity with fees awarded in other cases in the district is helpful in determining the applicable market rate, the Court is cautious of simply "[r]ecycling rates awarded in prior cases without considering whether [the rates] continue to prevail." Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005). Instead, the law requires a "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill" and "an evaluation of evidence proffered by the parties." Id.

The reasonable hourly rate is calculated based on what a reasonable client in the relevant geographic area would pay. Arbor Hill Concerned Citizens, 493 F.3d at 119. See also Luciano v. Olsten Corp. 109 F.3d 111, 115-16 (2d Cir. 1997) (holding that a reasonable rate should be inline with prevailing rates in the district in which the court sits). Reasonable rates in the District of Connecticut may vary from one geographic location to another. Under most circumstances, a reasonable client in New Haven would not be willing to pay the higher hourly rate generally billed by New York City firms, as is evidenced by Mr. Richardson's Affidavit. See also Arbor Hill Concerned Citizens, 493 F.3d at 119 ("a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent

with those charged locally"). However, the Plaintiff points out that she and many of the witnesses in the case worked for Watson Wyatt and Company in Stamford, and that most of the events at issue in this case occurred there. The hourly rates billed by lawyers in Stamford tend to be higher than those billed in New Haven, as is evidenced by a comparison of the affidavits of Gary Phelan and Robert Richardson. Furthermore, a client in Stamford, which is closer to New York, might be willing to pay an hourly rate closer to the rates billed by New York firms. However, it seems likely that any reasonable client in Connecticut would insist on paying hourly rates somewhat lower than those billed by more expensive New York firms such as the Vladek Firms. See <u>Tsombanidis</u>, 208 F. Supp. 2d at 277 (holding that reasonable rates in Washington, D.C., do not apply in Connecticut).

The Court does not believe that a reasonable client in Ms. Pappas' position would be willing to pay the hourly rates billed at Mr. Phelan's Stamford firm. While the Court does not doubt that the Plaintiff's attorneys offer considerable skill and experience, this case was not particularly complex and did not present a large number of particularly unusual issues. Thus, the highest rates billed by employment plaintiffs' attorneys in the District of Connecticut may not be appropriate in this case. As Mr. Phelan explains in his affidavit, he is a highly experienced partner who works at the satellite office of a New York firm. Thus, Mr.

Phelan's rates are not demonstrative of what a reasonable Connecticut-based client would be willing to pay an associate to work on a case like this one. The evidence presented to the Court suggests that reasonable hourly rates for this case fall somewhere between the hourly rates billed by Mr. Phelan's office and those billed at Mr. Richardson's firm. The Court finds that a reasonable, paying client in this district would be willing to pay lawyers with the skill and experience of Ms. Clark and Mr. Licul hourly rates of $400 and $300 respectively for their work on this case. The Court finds that a reasonable hourly rate for work performed by Attorney Host is $250 per hour. The Court finds that a reasonable hourly rate for work performed by Attorney's Wilson and Osborne is $225 per hour. The hourly rates requested by the Plaintiff for the law clerks and paralegals are reasonable.

      b.   Reasonable Number of Hours Expended

Applications for attorney's fees "must be accompanied by contemporaneous time records that specify for each attorney, the date, hours expended, and nature of the work done." New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). In reviewing the fee application, the Court will exclude hours that were not "reasonably expended." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

The time records attached to the Plaintiff's motions are sufficiently specific with respect to the nature of the work

performed by the Vladek Firm. The Defendant argues that some of the entries in these records fail to establish that the Firm expended its time reasonably.

The Defendant argues that the total number of hours expended on the case is excessive given that the case did not present many novel issues. (Def.'s Mem. in Opp. at 7.) The Defendant argues that the Vladek Firm specializes in representing plaintiffs in employment lawsuits and that the Firm should therefore have been able to perform the necessary work on this case while expending relatively few hours. (Id.) However, the Court does not believe that experienced lawyers should be required to cut corners. The Vladek Firm and Ms. Clark have achieved success in this and in other cases by demonstrating not only superior legal skills, but also by being thorough in performing their work. Even if this case was not exceedingly complex, the Court is aware that the nature of the case required the Plaintiff's attorneys to perform a considerable amount of work before, during and following the trial. The Court finds that the hours for which Plaintiffs requests a fee award "were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).

The Defendant argues that some of the hours requested by the Plaintiff were not reasonably expended because the Plaintiff sometimes employed two lawyers to perform tasks for which only one lawyer is required. (Def.'s Mem. in Opp. at 9.) For example, the

13

Defendant argues that the Plaintiff should not be awarded fees paid to a second lawyer who attended depositions but did not actively participate. (Id.) However, the Court is aware that it is common practice for a lawyer to bring along a colleague to assist at a deposition or at a court proceeding. There is no reason why a lawyer representing a Title VII plaintiff should be prevented from practicing in this manner. See Ass'n for Retarded Children, 711 F.2d at 1146 ("prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist") (citing Seigal v. Merrick, 619 F.2d 160, 164 (2d Cir. 1980)).

The Defendant also argues that some of the hours requested are duplicative because they are the result of the Vladek Firm having assigned new lawyers who were unfamiliar with the case. (Def.'s Mem. in Opp. at 7.) The Defendant argues that the Plaintiff should not be allowed to recover for the time these lawyers spent familiarizing themselves with the case. (Id.) However, Ms. Clark explains that her firm has already eliminated from the Plaintiff's request time newly assigned lawyers spent learning the case. (Reply Declaration of Anne L. Clark in Support of Plaintiff's Application for Attorney's Fees and Costs [Doc. No. 137, hereinafter "Clark Reply Decl."] ¶ 8.) The Court finds that none of the hours for which the Plaintiff requests an award are unreasonably duplicative.

The Defendant disputes a few of the time entries which are, it claims, "vague" and "deficient." (Def.'s Mem. in Opp. at 9.) Any deficiency in the small number of entries disputed by the Defendant has been adequately explained. (See Clark Reply Decl. ¶ 12-14.) Contrary to the Defendant's claims, the Court finds that the 13.75 hours expended by Attorney Licul and entered in the billing records as "Trial prep" were reasonably expended. It is clear to the Court that these hours were expended in an effort to prepare for trial, and not simply as a result of Attorney Licul needing to familiarize himself with the case after he replaced the lawyer who had been assigned to it before him. (See id. ¶ 14.)

The Defendant argues that the Plaintiff should not be allowed to recover attorney's fees for time her attorneys spent traveling. (Def.'s Mem. in Opp. at 11.) The Court rejects the argument that no fee should be awarded for the time a lawyer spends traveling to court or to depositions. See Henry v. Webermeier, 738 F.2d 188, 194 (7th Cir. 1984) ("When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling"); quoted in Gonzalez v. Town of Stratford., 830 F. Supp. 111, 115 (D. Conn. 1992). Furthermore, Ms. Clark has reduced the number of hours requested for traveling to reflect time spent working on other cases. (Clark Reply Decl. ¶ 15.) The Court does not find it necessary to further reduce the fee award to reflect time the

Plaintiff's attorney's travel time.

The Defendant objects to a total of 1 1/4 hours spent preparing supporting documentation for the Plaintiff's lawyers' application for pro hac vice admission. The Court does not find this expenditure of time to be unreasonable as the Court is not aware of any rule that a Title VII plaintiff must hire exclusively lawyers who are admitted in the district in which the Court sits.

c.  The Total Fee Award

The Defendant argues that the attorney's fee award should be reduced to reflect what the Defendant claims to be the Plaintiff's limited success at trial. In support of this argument, the Defendant claims that the Plaintiff seeks an "award of $428,213.56 in a case where the jury awarded Plaintiff $20,625.00 in compensatory damages." (Def.'s Mem. in Opp. at 1.) This accounting of the jury's verdict and the award the Plaintiff seeks is misleading. First, the Defendant includes the amounts claimed by the Plaintiff as pre- and post-judgment interest and tax "gross up" in its calculation of the fee award Plaintiff seeks. However, these sums should not be calculated as part of the attorney's fees and costs award. Rather, these sums are part of the compensatory damages the Plaintiff seeks. Second, as the Defendant is aware, the jury's verdict entitles the Plaintiff to compensatory damages of well over $20,625.00. The Defendant omits from its calculation the damages to which it stipulated, namely the damages for the

16

Plaintiff's back pay and COBRA contributions. The Defendant's creative calculations do not persuade the Court that Plaintiff achieved an "extremely limited degree of success." (See Def.'s Mem. in Opp. at 5.)

Nor do the Defendant's selective descriptions of what transpired during settlement negotiations persuade the Court that it should reduce the Plaintiff's fee award to reflect any alleged disparity between the Plaintiff's settlement demands and the amount she recovered as a result of the jury's verdict. It would be improper for the Court to consider the Plaintiff's settlement demands as evidence of her limited success at trial. Ortiz v. Regan, 980 F.2d 138, 140 (2d Cir. 1992) ("[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded").

Contrary to the Defendant's attempts to minimize the Plaintiff's success in this case, the Plaintiff was made whole for the losses she suffered as a result of her unlawful retaliatory discharge. She was therefore successful in achieving one of her objectives in initiating this action.

In any event, there is no support for the Defendant's argument that the size of the Plaintiff's damages award warrants a reduction in the attorney's fees she is awarded. The Defendant cites Farrar v. Hobby, 506 U.S. 103, 114-16 (1992), and Pino v. Locascio, 101

F.3d 235, 237 (2d Cir. 1996), in which courts held that a plaintiff who received only nominal damages generally could not recover as a prevailing party.  Where a plaintiff receives as substantial an award as the Plaintiff did in this case, the "reduction of a requested fee merely because the damages recovery was small is 'error unless the size of the award is the result of the quality of representation.'"  See Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 99 (2d Cir. 1997) (quoting DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985)).

The Defendant's suggestion that a fee award must be proportional to the damages awarded is at odds with the manner in which courts interpret fee-shifting statutes.  "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."  City of Riverside v. Rivera, 477 U.S. 561, 576 (1986) (rejecting defendant's argument that an award of $245,456.25 in fees in a case where plaintiff recovered $33,350 in compensatory and punitive damages was "disproportionate").  "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation," and, therefore, a rule that allowed courts to reduce fee awards to plaintiffs who recovered small amounts of damages "would contravene that clear

legislative intent by relinking the effectiveness of a civil rights plaintiff's legal representation solely to the dollar value of her claim." Quaratino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1999).

Having found the hours requested by the Plaintiff to have been reasonably expended, the Court calculates attorneys' fees as follows:

| Attorney | Hours expended | Hourly rate | Fee Award |
|---|---|---|---|
| Anne Clark | 409.50 | $400 | $163,800 |
| Valdi Licul | 192.25 | $300 | $57,675 |
| Michele Host | 203.00 | $250 | $50,750 |
| Sharon Wilson | 20.25 | $225 | $4,556.25 |
| Rebecca Osborne | 20.25 | $225 | $4,556.25 |
| Law clerks | 44.75 | $75 | $3,356.25 |
| Paralegals | 64.25 | $65 | $4,176.25 |
| Total Fee Award | | | $288,870.00 |

The Court therefore awards attorney's fees in the amount of $288,870.00.

### B. COSTS

The Defendant disputes the costs claimed by the Plaintiff, arguing that the Plaintiff seeks costs relating to a number of expenses which cannot be reimbursed under the Local Rule 54. (Def.'s Mem. in Opp. at 18.) However, the Defendant is mistaken about the authority under which the Plaintiff seeks costs. The Plaintiff does not seek costs under Fed. R. Civ. P. 54, codified at

28 U.S.C. § 1920, or the local rule based on that statute. Plaintiff seeks costs pursuant to 42 U.S.C. § 2000e-5(k) and the CFEPA. Fee-shifting statutes such as § 2000e-5(k) allow plaintiffs to recover costs of litigation that are not otherwise recoverable under § 1920. Fed. R. Civ. P 54, and by extension the local rule based on it, authorizes only the costs that may be recovered by the prevailing party in most civil suits. Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987). In contrast, fee-shifting statutes such as Title VII "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Id. (citing Laffey v. Northwest Airlines, Inc., 746 F.2d 4, 30 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985)). Therefore, contrary to the Defendant's arguments based on the local rule, the Plaintiff is entitled to recover reasonable costs related to computerized research, telephone calls, postage and federal express services, and travel.

The Defendant argues that it should not be responsible for travel costs incurred by the Plaintiff's counsel that resulted from the Plaintiff's choice to hire a law firm based in New York. Given that this case arose from activities that took place in Stamford, it is not surprising that the Plaintiff engaged New York-based counsel who were required to be present in New Haven and in Stamford for various proceedings and depositions. Therefore, for the most part, costs associated with the Plaintiff's decision to

hire a New York firm are reasonable.

However, the Court finds that the Plaintiff has not met her burden of demonstrating that certain of the costs she seeks to recover are "reasonable out-of-pocket expenses." With respect to the Plaintiff's original Application for Attorney's Fees and Costs, the Court deducts to following costs from the fee award:

- The entry for $604.39 labeled as "Miscellaneous" costs (see Clark Decl. ¶ 48) will be deducted because the Plaintiff does not provide any detail about how this money was spent.[3]

- The entry for $173.40 for "Document Printing/Services" on December 18, 2006 (see id. Ex B at 7) will be deducted because the Plaintiff does not offer any explanation for this cost. The Vladek Firm's time records indicate that counsel was completing the trial, waiting for the verdict and traveling to New York on that day. (Clark Decl. Ex. A at 21.) It is unclear why these tasks involved the need to print documents.

- The entry for $42.00 for a "Messenger" (see Clark Decl. ¶ 48) will be deducted because the Plaintiff does not provide any

---

[3]The Plaintiff's counsel explains that these costs "predominantly" reflect "food for attorneys and staff when working nights and weekends and during trial and depositions." (Clark Decl. ¶ 48.) The Court does not believe that attorneys' meals are a reasonable cost for the Plaintiff to recover from the Defendant. The Court also observes that the document listing "Disbursements Paid Directly to Vendors" attached to Ms. Clark's Declaration lists expenses such as "Parking at Vladek;" "Lunch at Vladek," and "Lunch at trial." (Id. Ex. B) It appears that Ms. Clark has included these costs in the "Miscellaneous" category in her Declaration. (See id. ¶ 48.) These costs should not be awarded.

explanation for this cost.

- The entry for $906.73 for "Express Mail" (see id.) will be reduced by 50% to $453.37 because the Plaintiff provides insufficient detail explaining this cost.

- The entry for $72.50 for "Postage" (see id.) will be reduced by 50% to $36.25 because the Plaintiff provides insufficient detail explaining this cost.

- The entry for $3,686.74 for "Photocopying" (see id.) will be reduced by 50% to $1,843.37 because the Plaintiff provides insufficient detail explaining this cost.

- The entry for $1,243.00 for "Telephone (toll calls)" (see id.) will be reduced by 50% to $621.50 because the Plaintiff provides insufficient detail about the calls that were made and because the Court is unable to correlate all the calls listed with entries in the attorneys' time records.

- The entry for "Transportation" will be reduced by $105 apparently expended on March 4, 2005 (see id. Ex. B at 17) because this entry does not correlate with entries in the attorneys' time records.

Taking account of these adjustments, the Court awards $24,605.95 for the costs the Plaintiff seeks in her first Application for Attorneys' Fees and Costs.

With respect to the Plaintiffs Supplemental Application for Attorney's Fees and Costs, the award for costs will be adjusted as follows:

- The entry for $550.35 for "Express Mail" (see Clark Decl Supp. ¶ 17) will be reduced by 50% to $275.18 because the Plaintiff provides insufficient detail explaining this cost.

- The entry for $134.20 for "Photocopying" (see id.) will be reduced by 50% to $67.10 because the Plaintiff provides insufficient detail explaining this cost.

Taking account of these adjustments, the Court awards $1,020.07 for the costs the Plaintiff seeks to recover in her Supplemental Application for Attorneys' Fees and Costs.

In total, the Court awards the Plaintiff $25,626.02 in costs.

C. PRE-JUDGMENT INTEREST

Under Title VII, it is within the discretion of the Court to award pre-judgment interest on the Plaintiff's damages award in order to make the Plaintiff whole. Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 314 F. Supp. 2d 201, 203 (S.D.N.Y. 2003) (citing Jones v. UNUM Life Ins. Co., 223 F.3d 130, 139 (2d Cir. 2000)); see also Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998). The Second Circuit has "held that 'it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award'" under Title VII. Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993) (quoting Clarke v. Frank, 960 F.2d 1146, 1154 (2d Cir. 1992)). It is within the Court's discretion to award prejudgment interest for other kinds of compensatory damages. See, e.g., Robinson v. Instructional Sys., Inc., 80 F. Supp. 2d

203, 207-8 (S.D.N.Y. 2000) (awarding pre-judgment interest on award for mental anguish); Perdue v. City Univ. of New York, 13 F. Supp. 2d 326, 342 (E.D.N.Y. 1998) (same).

The Defendant contends that the Plaintiff is only entitled to pre-judgment interest on the award for her lost bonus because, the Defendant claims, the other damages were not part of the judgment in this case. (Def.'s Mem. in Opp. at 24.) The Defendant admits that it stipulated to the other elements of damages, but claims that this stipulation was never entered into the trial record and that there was no judgment on these amounts in this case. The Defendant's claim that the stipulation is not part of the record is erroneous (see Tr. 12/15/06 at 20-21), and this argument is without merit.

In addition to making the Plaintiff whole, one purpose of awarding pre-judgment interest on back pay "is to prevent an employer from attempting 'to enjoy an interest-free loan for as long as it can delay paying out back wages." Saulpaugh, 4 F.3d at 145 (quoting Clarke 960 F.2d at 1154). This rationale is most directly applicable to damages reflecting sums that a defendant should have paid to a plaintiff in the past, such as the awards for the Plaintiff's back pay, bonus, and COBRA contributions in this case. The Court therefore awards pre-judgment interest for those elements of the Plaintiff's damages. The Court does not award pre-judgment interest on the damages award for the penalty the

Plaintiff incurred when she withdrew money from her retirement account. For this element of the Plaintiff's damages, there is no risk that the Defendant could have attempted to enjoy an interest free loan while delaying payment to the Plaintiff. In addition, the Court believes that the Plaintiff will be made sufficiently whole without pre-judgment interest on this element of her damages.

The Plaintiff argues that the Court should apply the Connecticut statutory interest rate of 10%. See Conn. Gen. Stat. § 37-3a. She argues that because the she has prevailed on her state law claims, that the Court should calculate pre-judgment interest according to state law. Generally, "in cases where the judgment is based on violations of both state and federal law, it is common practice in the Second Circuit to apply the federal interest rate pursuant to 28 U.S.C. § 1961(a)." Cioffi v. New York Cmty. Bank, 465 F. Supp. 2d 202, 222 (E.D.N.Y. 2006) (citing Greenway v. Buffalo Hilton Hotel, 951 F.Supp. 1039, 1062-63 (W.D.N.Y. 1997) and McIntosh v. Irving Trust Co., 873 F. Supp. 872, 883 (S.D.N.Y. 1995)). However, the Defendant does not argue that the Court should apply anything other than the Connecticut interest rate. Therefore, the interest will be calculated according to the 10% interest rate suggested by the Plaintiff. See Vernon v. Port Authority of New York and New Jersey, 220 F. Supp. 2d 223, 236 (S.D.N.Y. 2002) ("[t]he rate at which the prejudgment interest is calculated is within the Court's discretion") (citing Endico

<u>Potatoes, Inc. v. CIT Group/Factoring, Inc.</u>, 67 F.3d 1063, 1071 (2d Cir. 1995)).

The Plaintiff shall submit a calculation of the prejudgment interest to which she is entitled based on a 10% interest rate applied to her awards for back pay, COBRA contributions, lost bonus and taxes and penalty incurred as a result of her early withdrawals from her retirement account. The Plaintiff shall submit this proposed calculation within 10 days of this ruling, and the Defendant shall have 10 days thereafter in which to reply.

### D. POST-JUDGMENT INTEREST

The Plaintiff is entitled to post-judgment interest on all of the damages she has been awarded. 28 U.S.C. § 1961. "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." <u>Id.</u> Interest must therefore be calculated from the date of the original judgment in this case on the damages awards for back pay, COBRA contributions, lost bonus, as well as on damages relating to the Plaintiff's withdrawal from her retirement account.

### E. RELIEF FROM ADVERSE TAX CONSEQUENCES OF THE DAMAGES AWARD

In support of her claim that the Court should award compensation for the adverse tax consequences of her damages award,

the Plaintiff cites Sears v. Atchison, Topeka & Santa Fe Ry., 749 F.2d 1451, 1456 (10th Cir. 1984). In Atchison, the court increased an award for back pay in order to reflect the fact that a lump sum payment of the damages award would put the plaintiffs in a higher tax bracket than they would have been in otherwise. Id. The court noted that "[a] tax component may not be appropriate in a typical Title VII case" but that such an award was appropriate under the special circumstances of that case. The other cases cited by the Plaintiff deal with similar special circumstances: in all of these cases courts "grossed up" awards in order to offset the tax consequences to the plaintiff of receiving back pay and/or front pay in a lump sum that would place the plaintiff in a higher tax bracket. See O'Neill v. Sears, Roebuck and Co., 108 F. Supp. 2d 443 (E.D. Pa. 2000) (enhancing damages to offset tax consequences of lump sum payment of front and back pay, but nor for compensatory damages); Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, 87 P.3d 757 (Wash. 2004) (interpreting Washington State employment discrimination laws to allow for a "gross up" to offset the tax consequences of receiving lump sum damage award); Ferrante v. Sciaretta, 839 A.2d 993 (N.J. Super. Law Div. 2003) (requiring, under New Jersey law, the defendant to compensate the plaintiff for the adverse tax consequences of receiving a damages payment in a lump sum).

The Plaintiff requests a kind of relief that is different from

the sort of tax "gross up" awarded in the cases she cites.
Plaintiff asks the Court, for example, to "gross up" her award of
$6,063.33 for her COBRA payments to $9,631.98 reflecting her 37.05%
effective tax rate. (Affirmation of Patricia Alevrontas
[hereinafter "Alevrontas Aff."], Doc. No. 116.) Claiming that a
damages award for her COBRA contributions is not deductible from
her gross income, the Plaintiff argues that a "gross up" is
necessary in order to make her whole for her losses after she has
paid her taxes. The Plaintiff makes the same argument regarding
the damages awarded for the penalties and lost interest she
incurred as a result of withdrawing money from her retirement
account. (Id.) The Plaintiff complains that she will not be able
to deduct any of these amounts from her gross income. (Id.) Unlike
the plaintiffs in the cases she cites, nowhere does she express the
concern that a lump sum damage award would place her in a higher
tax bracket. Instead, the Plaintiff is effectively asking the
Court to review the tax code and fashion a remedy where the
provisions of the tax code fail to allow her to deduct her damages
awards from her gross income. Given that the cases Plaintiff cites
cover dissimilar factual scenarios, the Court is not inclined to
engage in this exercise. See Campbell v. Comm'n of Internal
Revenue, 274 F.3d 1312, 1315 (10th Cir. 2001) ("Congress, not this
court, must correct any shortcomings in the [tax code's]
application.")

In any event, the Court does not believe that it is an appropriate exercise of the Court's discretion to require the Defendant to compensate the Plaintiff for the tax consequences of these elements of her compensatory damages. A plaintiff has the burden of proving that her award should be increased to reflect adverse tax consequences. <u>Hukkanen v. Int'l Union of Operating Eng'rs</u>, 3 F.3d 281, 287 (8th Cir. 1993) (upholding district court's decision not to "gross up" damages award to offset tax consequences of the lump sum payment of the award because the plaintiff "failed to present evidence of the enhancement's amount or a convenient way for the court to calculate the amount at the time the court announced its judgment"); <u>see also</u> <u>O'Neill</u>, 108 F. Supp. 2d at 447 (noting that the plaintiff had presented testimony on the subject of the tax consequences at trial and distinguishing the case on that ground from an earlier case in which the court declined to award a "gross up"). However, instead of introducing evidence relevant to a "gross up" at trial, the Plaintiff stipulated to the amounts that she could recover as compensatory damages in the event that the jury found for her. The Plaintiff now argues that the amounts to which she stipulated do not make her whole. As evidence that the damages to which the Plaintiff stipulated do not make her whole, she submits a two-page affirmation from an accountant. The Plaintiff effectively asks the Court to make a finding of fact regarding the amount of damages necessary to make the Plaintiff

whole based on this document.  Because the parties have stipulated

to the amount of compensatory damages that can be awarded in this

case, this is not the appropriate time for either of the parties to

engage in a dispute over the adequacy of the compensatory relief

awarded.[4]

The Plaintiff also seeks a "gross up" of a portion of her

attorney's fee award.  She asks the Court to "gross up" $13,649.49

she paid prior to October 22, 2004 in attorney's fees to $21,683.07

reflecting her effective tax rate of 37.05%.  (Alevrontas Aff. ¶

5d.)  The American Jobs Creation Act, effective October 22, 2004,

amended the Internal Revenue Code to allow a taxpayer, in

calculating gross income, to deduct "attorney fees and court costs

paid by, or on behalf of, the taxpayer in connection with any

action involving a claim of unlawful discrimination."  Pub. L. No.

108-357, § 703, 118 Stat. 1418, 1546 (2004) (codified as amended at

---

[4]It might at first appear that the Court's award of pre-judgment interest on some of the Plaintiff's compensatory damages, thus enhancing the amounts to which the parties stipulated, is inconsistent with this reasoning.  However, an award of pre-judgment interest is distinguishable from the relief for tax consequences the Plaintiff seeks here.  It is ordinarily within the Court's discretion to award pre-judgment interest. Courts often award pre-judgment interest on top of the amounts awarded as compensatory damages by juries.  See, e.g., Robinson, 80 F. Supp. at 207-8; Collins v. Suffolk County Police Dept., 349 F. Supp. 2d 559, 565 (E.D.N.Y. 2004).  The parties were surely aware that courts generally exercise their discretion in this manner when they entered into the stipulations.  In contrast, the relief at issue here would require a novel extension of the case law.  Under the circumstances, the Court declines to subject the Defendant to this additional liability.

26 U.S.C. § 62(a)(20)(2006)).  The Act states that the amendments

it makes "shall apply to fees and costs paid after the date of the

enactment of this Act with respect to any judgment or settlement

occurring after such date."  Id., 118 Stat. at 1548; see also

Comm'n of Internal Revenue v. Banks, 543 U.S. 426, 433 (2005)

(noting that the legislation does not apply retroactively).  The

Plaintiff claims that the portion of her fee award compensating her

for the $13,827.50 she paid to her attorneys prior to October 22,

2004, cannot be deducted under the Act or under another "tax

scenario."  (Alevrontas Aff. ¶ 5d.)  Without citing any authority,

the Plaintiff claims that the Court should adjust her fee award to

offset this tax consequence.  (Id.)

    The Court declines to "gross up" this portion of the fee award

for two reasons.  First, discussed above, it is not normally the

role of this Court to correct for any claimed inequity in the

application of the tax code.  The second reason applies equally to

all the forms of relief from adverse tax consequences claimed by

the Plaintiff: Ms. Alevrontas' calculations regarding the

Plaintiff's tax situation relate to the 2006 tax year, not the

current tax year.  Even if the Court was required to adjust the fee

award to compensate the Plaintiff for the fact that the Act is not

retroactive, the Court would be unable to do so without an accurate

calculation of her effective tax rate for the current tax year.

Ms. Alevrontas claims that the Plaintiff's "combined Federal and

State tax brackets and effective tax rates are expected to be essentially the same for the tax year 2007." (id. ¶ 4.) However, given the variables upon which an individual's tax bracket and tax rate depend, it is surely beyond the ability of Ms. Alevrontas to foresee the Plaintiff's tax situation at any point in the future with any degree of accuracy. Furthermore, even if the Court could rely on Ms. Alevrontas' prediction that the Plaintiff's effective tax rate is "essentially the same" for the current tax year, the statement does not provide a precise tax rate with which the Court might calculate the claimed "grossed up."

The Plaintiff's motion for relief from tax consequences is therefore denied.

<u>CONCLUSION</u>

Attorneys' fees in the amount of $288,870.00 and costs in the amount of $25,626.02 are hereby awarded to the Plaintiff. The Plaintiff will have 10 days in which to submit a calculation of the pre-judgment interest to which she is entitled, and the Defendant will have 10 days in which to respond. Post-judgment interest is to be calculated from the original date of judgment in this case on all back pay and compensatory damages awarded to the Plaintiff. The Plaintiff's Motion for Attorney Fees and Costs, Interest, and Relief from Tax Consequences [Doc. No. 114] is GRANTED in part and DENIED in part. The Plaintiff's Motion for Supplemental Attorneys' Fees and Costs [Doc. No. 139] is GRANTED in part and DENIED in

part.

SO ORDERED.

_____/s/_____

ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 2nd day of January, 2008